UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT SCOT BUILDING VENTURE LLC and
RSBV PATHWAY LLC,

                Plaintiffs,

        v.

CREATIVE WEALTH MEDIA FINANCE CORP.
and JASON CLOTH,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No: 1:22-cv-10329

## **DEFENDANTS CREATIVE WEALTH MEDIA FINANCE CORP. AND JASON CLOTH'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**HERRICK, FEINSTEIN LLP**
William R. Fried, Esq.
Samuel J. Bazian, Esq.
Two Park Avenue
New York, New York 10016
Tel: (212) 592-1400
*Attorneys for Defendants*
*Creative Wealth Media Finance Corp.*
*and Jason Cloth*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

ALLEGATIONS OF THE AMENDED COMPLAINT ............................................................. 3

     A.    Plaintiffs Enter into Contracts with Creative Wealth ........................................... 3

         1.    The Film Contracts ................................................................................ 3

         2.    The Pathway Contract........................................................................... 4

     B.    Plaintiffs' Allegations .......................................................................................... 6

ARGUMENT ................................................................................................................................ 7

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED
    FOR LACK OF PERSONAL JURISDICTION ............................................................. 7

     A.    Plaintiffs Fail to Establish General Jurisdiction Over
         the Creative Defendants........................................................................................ 7

     B.    Plaintiffs Fail to Establish Specific Jurisdiction Over
         the Creative Defendants........................................................................................ 9

II.    IN THE ALTERNATIVE, THE AMENDED COMPLAINT SHOULD
    BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS ....... 11

     A.    Canadian Court Can Adequately Resolve Plaintiffs' Claims ............................. 12

         1.    The Creative Defendants are Subject to Service of Process
              in Canada ............................................................................................ 12

         2.    Canada Permits Litigation of the Subject Matter of this Dispute .......... 13

     B.    Plaintiffs' Choice of Forum is Entitled to Little or No Deference ..................... 14

     C.    Private and Public Interest Factors Weigh in Favor of Dismissal ...................... 15

         1.    Private Interest Factors ........................................................................ 15

         2.    Public Interest Factors......................................................................... 16

III.    RSBVP FAILS TO STATE A CLAIM FOR FRAUD AGAINST CLOTH ................. 17

     A.    RSBVP Failed to Plead its Fraud Claim with the Requisite Particularity .......... 17

    B.    RSBVP Has Not Particularly Pled Reasonable Reliance ................................... 21

IV.    RSBVP'S DEMAND FOR PUNITIVE DAMAGES SHOULD
       BE DISMISSED ........................................................................................................... 23

CONCLUSION ........................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Abdullahi v. Pfizer, Inc.*,
   562 F.3d 163 (2d Cir. 2009)........................................................................15

*In re Air Crash Near Peixoto De Azeveda, Braz., on Sept. 29, 2006*,
   574 F. Supp. 2d 272 (E.D.N.Y. 2008), *aff'd sub nom., Lleras v.*
   *Excelaire Services Inc.*, 354 F. App'x. 585 (2d Cir. 2009)....................................13

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015)..............................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................24

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)......................................................................11

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016)....................................................................8, 9

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
   155 F.3d 603 (2d Cir. 1998)..................................................................12, 15

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001)......................................................................21

*Carey v. Bayerische Hypo-und Vereinsbank AG*,
   370 F.3d 234 (2d Cir. 2004)......................................................................15

*CCS Int'l., v. ECI Telesystems*,
   No. 97 Civ. 4646, 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) ...........................................16

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994)....................................................................18, 20

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013)....................................................................18, 21

*Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*,
   No. 05 Civ. 9640(PKL), 2009 WL 935665 (S.D.N.Y. Apr. 7, 2009).....................................17

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006)......................................................................17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................8

*DeLorenzo v. Viceroy Hotel Grp., LLC,*
   757 F. App'x 6 (2d Cir. 2018) ...........................................................................10

*Design Strategy, Inc. v. Davis,*
   469 F.3d 284 (2d Cir. 2006)................................................................................23

*Doe v. Hyland Therapeutics Div.,*
   807 F. Supp. 1117 (S.D.N.Y. 1992)....................................................................16

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.,*
   806 F. Supp. 2d 712 (S.D.N.Y. 2011)................................................................14

*Farsura v. QC Terme US Corp.,* No. 21 Civ 9030 (AT), 2022 WL 4226266
   (S.D.N.Y. Sept. 13, 2022), *partial reconsid.,* 2022 WL 16838212
   (S.D.N.Y. Nov. 8, 2022).................................................................................8, 9

*Gucci Am., Inc. v. Weixing Li,*
   768 F.3d 122 (2d Cir. 2014)..................................................................................9

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)............................................................................................11

*Hettinger v. Kleinman,*
   733 F. Supp. 2d 421 (S.D.N.Y. 2010)...........................................................21, 23

*Iragorri v. United Techs. Corp.,*
   274 F.3d 65 (2d Cir. 2001)........................................................................11, 12, 14

*Klinghoffer v. S.N.C. Achille Lauro,*
   937 F.2d 44 (2d Cir. 1991)..................................................................................10

*Lana Int'l Ltd. v. Boeing Co.,*
   No. 93 Civ 7169 (LLS), 1995 WL 144152 (S.D.N.Y. Mar. 30, 1995)................13

*Lerner v. Fleet Bank N.A.,*
   459 F.3d 273 (2d Cir. 2006)................................................................................18

*Liaros v. Vaillant,*
   No. 93 Civ. 2170 (CSH), 1996 WL 88559 (S.D.N.Y. Mar. 1, 1996)...................10

*LP Funding, LLC v. Tantech Holdings, Ltd.,*
   No. 15CV4081-LTS, 2016 WL 1706182 (S.D.N.Y. Apr. 27, 2016).....................18

*Luce v. Edelstein,*
   802 F.2d 49 (2d Cir. 1986)..................................................................................18

*Mayline Enters., Inc. v. Milea Truck Sales Corp.,*
   641 F. Supp. 2d 304 (S.D.N.Y. 2009).................................................................25

iv

*Megna v. Biocomp Labs. Inc.*,
   166 F. Supp. 3d 493 (S.D.N.Y. 2016)............................................................................8

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   725 F.3d 65 (2d Cir. 2013)...........................................................................................24

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..............................................................................................7

*N.B. Garments (PVT), Ltd. v. Kids Int'l Corp.*,
   No. 03 Civ. 8041(HB), 2004 WL 444555 (S.D.N.Y. Mar. 10, 2004) ....................18

*Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013).........................................................................................18

*Omnipol, A.S. v. Multinational Defense Servs., LLC*,
   32 F.4th 1298 (11th Cir. 2022) ...................................................................................17

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).........................................................................................11, 13, 16

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
   929 F. Supp. 117 (S.D.N.Y. 1996) ..............................................................................19

*Sapirstein-Stone-Weiss Found. v. Merkin*,
   No. 13 Civ. 415, 2013 WL 2495141 (S.D.N.Y. June 11, 2013).............................24

*Schwartzco Enters. LLC v. THM Mgmt., LLC*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014) .....................................................................18, 19

*Sempra Energy Trading Corp. v. Algoma Steel, Inc.*,
   No. 00 Civ. 9227 (GEL), 2001 WL 282684 (S.D.N.Y. Mar. 22, 2001),
   *aff'd*, 300 F.3d 242 (2d Cir. 2022) ............................................................................13

*Shanahan v. Vallet*,
   No. 03 Civ. 3496, 2004 WL 2937805 (S.D.N.Y. Dec. 19, 2004)...........................24

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994).........................................................................................18

*Smith v. Lightning Bolt Prods., Inc.*,
   861 F.2d 363 (2d Cir. 1988).........................................................................................23

*Soley v. Wasserman*,
   823 F. Supp. 2d 221 (S.D.N.Y. 2011).........................................................................20

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014)............................................................................................8

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018).......................................................................9

*Strategic Value Master Fund v. Cargill Fin. Servs.*,
    421 F. Supp. 2d 741 (S.D.N.Y. 2006)......................................................15

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010).........................................................9

*Turedi v. Coca Cola Co.*,
    460 F. Supp. 2d 507 (S.D.N.Y. 2006),
    *aff'd*, 343 F. App'x. 623 (2d Cir. 2009).....................................................11

*Universe Antiques, Inc. v. Vareika*,
    826 F. Supp. 2d 595 (S.D.N.Y. 2011) (Marrero, J.),
    *aff'd*, 510 F. App'x 74 (2d Cir. 2013)........................................................25

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005).....................................................................12

*V&A Collection, LLC v. Guzzini Props. Ltd.*,
    46 F.4th 127 (2d Cir. 2022) ....................................................................10

*VictoriaTea.com, Inc. v. Cott Beverages, Canada*,
    239 F. Supp. 2d 377 (S.D.N.Y. 2003)......................................................12

## State Cases

*Cross v. Zyburo*,
    185 A.D.2d 967 (2d Dep't 1992) .............................................................23

*Fin. Servs. Vehicle Trust v. Saad*,
    72 A.D.3d 1019 (2d Dep't 2010) .............................................................24

*Global Minerals & Metals Corp. v. Holme*,
    35 A.D.3d 93 (1st Dep't 2006) ................................................................23

*Home Ins. Co. v. Am. Home Prods. Corp.*,
    75 N.Y.2d 196 (1990) .............................................................................24

*MP Cool Invs. Ltd. v. Forkosh*,
    142 A.D.3d 286 (1st Dep't 2016) ............................................................21

*MPEG La, LLC v. Samsung Elecs. Co.*,
    No. 654454/2015, 2017 WL 3670246 (Sup. Ct. N.Y. Cty. Aug. 25, 2017),
    *rev. judgement, dismissing appeal*, 166 A.D.3d 13 (1st Dep't 2018).........................21, 22, 23

*Pacnet Network Ltd. v. KDDI Corp.*,
    78 A.D.3d 478 (1st Dep't 2010) .................................................................22

*Perrotti v. Becker, Glynn, Melamed & Muffly LLP*,
    82 A.D.3d 495 (1st Dep't 2011) .................................................................22

*Stuart Silver Assoc. v. Baco Dev. Corp.*,
    245 A.D.2d 96 (1st Dep't 1997) .................................................................23

*Walker v. Sheldon*,
    10 N.Y.2d 401 (1961) .................................................................................24

### Foreign Cases

*Hryniak v. Mauldin*, [2014] 1 S.C.R. 87 (Can. Ont.) ......................................17

### Statutes

CPLR 301 .............................................................................................................8

CPLR 302(a) .........................................................................................................7

CPLR 302(a)(1) ..............................................................................................9, 10

CPLR 302(a)(2) ...................................................................................................9

CPLR 302(a)(3) ...................................................................................................9

CPLR 302(a)(4) ...................................................................................................9

Fed. R. Civ. P. 9(b) ...................................................................................2, 17, 18

Fed. R. Civ. P. 12(b)(2) ...........................................................................1, 7, 10

Fed. R. Civ. P. 12(b)(6) ......................................................................................1

Defendants Creative Wealth Media Finance Corp. ("Creative Wealth") and Jason Cloth ("Cloth") (collectively, the "Creative Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint ("AC")[1] filed by Plaintiffs Robert Scot Building Venture LLC ("RSBV") and RSBV Pathway LLC ("RSBVP") (collectively, "Plaintiffs") (i) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and, in the alternative, based upon *forum non conveniens*; and (ii) with respect to the fraud claim against Cloth, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

At its core, this action is a garden variety contract dispute between Florida-based investors and Canadian film-financiers.  From July 2019 to May 2020, RSBV, a Florida limited liability company and investor based in Florida, entered into seven agreements with Creative Wealth, a Canadian corporation based in Ontario, to participate in the financing of seven films (the "Films"). In May 2021, RSBVP, also a Florida limited liability company and investor based in Florida, entered into an investment agreement with Creative Wealth to finance a television series, entitled "*Pathway.*"

When the Films did not perform as expected and RSBV was unable to recoup its investment, Plaintiffs filed the instant action, claiming breach of contract and, as against Cloth, fraud based on his purported representations that, according to RSBVP's conclusory allegations, induced it to enter into the *Pathway* contract.

The Amended Complaint should be dismissed with prejudice for several reasons.  First, there is no personal jurisdiction over the Creative Defendants.  There is no general jurisdiction over them, as they are neither incorporated in nor maintain their principal places of business in

---

[1]  A copy of the Amended Complaint is annexed as Exhibit A to the Declaration of William R. Fried ("Fried Decl."), filed simultaneously herewith.

New York, and there are no nonconclusory allegations that they regularly conduct business here. Moreover, there is no basis for long-arm jurisdiction over them either, since they did not commit any torts or transact any business in New York relevant to Plaintiffs' claims.

Second, even if there were jurisdiction over the Creative Defendants, there is no reason for this action to be heard in this forum, since it involves claims between out-of-state parties concerning agreements that were executed and performed outside of New York and provide for the application of Ontario law. Thus, if the Court does not dismiss the Amended Complaint for lack of personal jurisdiction, this matter should be dismissed pursuant to the doctrine of *forum non conveniens*.

Third, in the event that the Court does not dismiss the Amended Complaint for lack of personal jurisdiction or based on *forum non conveniens*, RSBVP fails to state a claim against Cloth for fraud because its allegations are not plead with the particularity necessary to survive a motion to dismiss. RSBVP fails to allege (i) how Cloth's statements were fraudulent; (ii) the details giving rise to a strong inference that Cloth had an intent to defraud, knowledge of the falsity of his statements, or a reckless disregard for the truth; and (iii) reasonable reliance—let alone with the particularity required by Federal Rule of Civil Procedure 9(b).

Finally, RSBVP's demand for punitive damages on the fraud claim against Cloth is plainly inappropriate and must be denied. RSBVP's claim—to the extent one is found to exist (it does not)—alleges nothing more than ordinary fraud, for which punitive damages are not available.

Accordingly, the Court should grant the Creative Defendants' motion to dismiss the Amended Complaint with prejudice and grant such other relief as the Court deems just and proper.

## ALLEGATIONS OF THE AMENDED COMPLAINT[2]

The facts relevant to this motion are derived from the Amended Complaint, as well as the documents appended to the Declaration of Jason Cloth, sworn to on February 8, 2023, and filed simultaneously herewith (the "Cloth Decl."). The facts relevant to this motion to dismiss may be summarized as follows:

A. Plaintiffs Enter into Contracts with Creative Wealth

RSBV and RSBVP are both Florida limited liability companies with principal places of business in Florida. AC ¶¶ 6-7.

   1. *The Film Contracts*

Plaintiffs allege that, between July 2019 to May 2020, RSBV entered into a series of agreements (collectively, the "Film Contracts") pursuant to which RSBV invested money in the Creative Defendants' film projects. AC ¶ 13.

The first, dated July 29, 2019, was for the financing of the film *Ghostbusters*, in which RSBV invested $1,000,000 (the "*Ghostbusters* Contract"). AC ¶¶ 14-15; Cloth Decl. Ex. A. The second, dated January 14, 2020, was for the financing of the film *Monkey Man*, in which RSBV invested $750,000 (the "*Monkey Man* Contract"). AC ¶¶ 17-18; Cloth Decl. Ex. B. The third, dated April 21, 2020, was for the financing of *Gossamer*, in which RSBV invested $250,000 (the "*Gossamer* Contract"). AC ¶¶ 20-21; Cloth Decl. Ex. C. Fourth, RSBV made two investments in *Hailey and the Hero Heart* on or about April 21, 2020, pursuant to two contracts, one for $250,000 and one for $750,000 (the "*HHH* Contracts"). AC ¶¶ 23-26; Cloth Decl. Exs. D, E. Fifth, in May 2020, RSBV made two investments in *Bubbles Hotel* pursuant to two contracts, one for $250,000

---

[2] The Background facts are derived from the Amended Complaint. The Creative Defendants do not admit the truth of the allegations in the Amended Complaint but recognize that, for purposes of evaluating whether Plaintiffs have stated prima facie claims, the Court must accept the factual allegations as true. The Court should not, however, accept bare legal conclusions contained in the Amended Complaint when evaluating this motion to dismiss.

3

and one for $750,000 (the "*Bubbles* Contracts"). AC ¶¶ 28-31; Cloth Decl. Exs. F, G. The sixth, dated May 4, 2020, was for the financing of *Young Bear Grylls*, in which RSBV invested $1,000,000 (the "*YBG* Contract"). AC ¶¶ 33-34; Cloth Decl. Ex. H. The seventh and final Film RSBV financed was *Fables*, in which RSBV made two investments pursuant to two contracts, one on April 17, 2020, for $750,000, and one on July 24, 2020, for $250,000[3] (the "*Fables* Contracts"). AC ¶¶ 36-39; Cloth Decl. Exs. I, J.

### 2. The Pathway Contract

On May 19, 2021, RSBVP and Creative Wealth signed the contract, titled "Financing for the First Season of the Series Entitled 'Pathway,'" for the first season of the *Pathway* series, in which RSBVP invested over $6,000,000 (the "*Pathway* Contract"). AC ¶¶ 48-49; Cloth Decl. Ex. K at 1.

\* \* \*

Each of the *Fables*, *Bubbles*, and *HHH* Contracts included a few critical provisions relevant to this motion to dismiss. <u>First</u>, the parties explicitly agreed in each Film Contract that "[t]he Loan, inclusive of the Facilitation Fee, the Interest and the Net Profit Participation shall all be recouped from gross receipts generated by the Project, *if any*, in accordance with the Allocation of Defined Gross Receipts as defined herein." *See, e.g.*, Cloth Decl. Ex. D at 1 (emphasis added).[4]

<u>Second</u>, in all of the *Fables*, *Bubbles*, and *HHH* Contracts, RSBV represented and warranted that it "has relied on its own examination of the investment hereunder including, but not limited to, the LSA and the merits and risks involved. Investor is aware that it may be required to

---

[3] It appears that there is a mistake in the Amended Complaint, which alleges that the second *Fables* Contract is dated May 30, 2020. *See* AC ¶ 38.

[4] Though the exact language used in each Contract may vary, the essence and meaning are the same. *Compare* Cloth Decl. Ex. A at 1, *with* Cloth Decl. Ex. D at 1.

bear the financial risks of this investment for an indefinite period of time." *See, e.g.*, *id.* at 2. Relatedly, the parties executed a Participation Agreement contemporaneously with each Film Contract. Within each Participation Agreement, RSBV represented and warranted that it

> further acknowledges the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing. [Creative Wealth] makes no representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture. *There is no assurance that [RSVB] will earn a profit from or recoup its Participation.*

*See, e.g.*, *id.* at 11-12 § 8(a) (emphasis added).

> Third, the Participation Agreements each stated that

> This Agreement constitutes the entire agreement between the parties with respect to the transactions contemplated by it and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. There are no representations, warranties, covenants, conditions or other agreements, express or implied, collateral, statutory or otherwise, between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement. The parties have not relied on and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Agreement.

*See, e.g.*, *id.* at 14.

> Fourth, the Contracts state that they "will be governed by the laws of the Province of Ontario." *See, e.g.*, *id.* at 3. The Participation Agreements reiterate that they "will be governed by, interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein." *Id.* at 13 § 17; *see also id.* at 12 § 11.

B.  <u>Plaintiffs' Allegations</u>

Plaintiffs allege that, at the beginning of 2021—approximately eight months before the maturity date of any of the Film Contracts—RSBV's principal, Robert Harris, asked Cloth for an update on when payment on certain Film Contracts could be expected.  AC ¶ 42.  According to Plaintiffs, on February 24, 2021, Cloth emailed Harris explaining that the investments in *Fables*, *Bubbles*, and *HHH* carried "'zero' risk" and would be recouped by the third quarter of 2021—which would have been *ahead* of the repayment schedule agreed to in the respective Film Contracts.  AC ¶¶ 43-44.  Cloth purportedly also told Harris that the *Monkey Man* investment would be repaid by late summer 2021.  AC ¶ 45.  In conclusory fashion, Plaintiffs allege that "RSBV is informed and believes that" Cloth "knew at that time (based on the actual status of the corresponding Films) that there was a substantial likelihood" that the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* investments "would not be timely repaid."  AC ¶¶ 44-45.

Finally, Plaintiffs assert that, in May 2021, Cloth told Harris over the phone that the *Pathway* series "had already been 'greenlit' for five seasons and that Harris should therefore invest in that project."  AC ¶ 46.

In this action, Plaintiffs assert a breach of contract claim against Creative Wealth for its alleged failure and refusal "to repay any of the monies loaned" under the Film Contracts and *Pathway* Contract (AC ¶ 55), and RSBVP asserts a fraud claim against Cloth.  According to RSBVP, Cloth misrepresented to Harris: (i) that the *Fables*, *Bubbles*, and *HHH* investments would be repaid by the third quarter of 2021; (ii) that there was "'zero' risk" associated with the *Fables*, *Bubbles*, and *HHH* investments; (iii) that the *Monkey Man* investment would be repaid by late summer of 2021; and (iv) that the *Pathway* series had been "greenlit" for five seasons.  AC ¶¶ 58-59.  Plaintiffs state, in a purely conclusory manner, that they are "informed and believe" that Cloth

6

"knew the above representations were false at the time they were made" and that they were "made with the intent that RSBVP rely on the representations, and to induce Plaintiff RSBVP to invest substantial monies in *Pathway*."  AC ¶¶ 60-61.  RSBVP seeks punitive damages, claiming that Cloth, in supposedly making the alleged misrepresentations, "acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of their [sic] actions on Plaintiff RSBVP, and with willful and deliberate disregard of the consequences to Plaintiff RSBVP such as to constitute oppression, fraud or malice."  AC ¶ 64.

## ARGUMENT

I. **THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

All claims against the Creative Defendants, residents and domiciliaries of Canada, AC ¶¶ 8-10, must be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Plaintiffs bear the "burden of demonstrating personal jurisdiction over each" of the Creative Defendants with non-conclusory allegations.  *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 229 (S.D.N.Y. 2015).  It is axiomatic that this Court may only exercise personal jurisdiction to the extent permitted by New York's long arm statute and the requirements of due process.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  Two theories of personal jurisdiction are available: general jurisdiction and specific jurisdiction.  *Id.* at 567-68.  Here, neither applies.[5]

A. Plaintiffs Fail to Establish General Jurisdiction Over the Creative Defendants

General jurisdiction is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is

---

[5]  Plaintiffs do not allege that this Court has general jurisdiction over the Creative Defendants, and exclusively—and erroneously—rely on specific jurisdiction under CPLR 302(a).

warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). A corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction, and courts outside of a corporation's place of incorporation or principal place of business may only exercise general jurisdiction in "exceptional cases." *Daimler AG v. Bauman*, 571 U.S. 117, 126, 136 (2014); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (stating that where "a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"). Here Creative Wealth, as a company incorporated in and with its principal place of business in Canada, and Cloth, who is a citizen of and lives in Canada, are not subject to general jurisdiction in New York. AC ¶¶ 8-9; Cloth Decl. ¶¶ 2-3.

Plaintiffs offer nothing to support a theory of general jurisdiction. They instead allege, without basis, that "Defendants do substantial business in the state of New York, such that their contacts with New York are continuous and systematic." AC ¶ 11. "These conclusory allegations are insufficient to establish jurisdiction." *Farsura v. QC Terme US Corp.*, No. 21 Civ. 9030 (AT), 2022 WL 4226266, at *4 (S.D.N.Y. Sept. 13, 2022), *partial reconsid.*, 2022 WL 16838212 (S.D.N.Y. Nov. 8, 2022). Merely asserting a defendant's "'substantial and continuous activities' … is not sufficient to establish personal jurisdiction." *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 500 (S.D.N.Y. 2016). The Creative Defendants do not have any offices or employees here (Cloth Decl. ¶ 3), and tellingly absent from the Amended Complaint are any factual allegations suggesting that they regularly conduct business here. Accordingly, Plaintiffs' allegations that the Creative Defendants "continuous[ly] and systematic[ally]" "do substantial business in the state of New York" fail to satisfy CPLR 301. AC ¶ 11.

Nor can Plaintiffs establish that, despite these facts, "this is a 'truly exceptional case' where this Court should exercise general jurisdiction over a nondomiciliary defendant." *Farsura*, 2022 WL 4226266, at *4 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018)); *Brown*, 814 F.3d at 629; *see Gucci Am.*, *Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (local branch offices do not create general jurisdiction over non-resident bank).  In comparison to the bank in *Gucci Am., Inc.*, over which the court found no general jurisdiction despite the fact that the bank had branch offices in the forum, the Creative Defendants do not even have offices in New York. There is therefore no basis for general jurisdiction over the Creative Defendants.

B.  Plaintiffs Fail to Establish Specific Jurisdiction Over the Creative Defendants

Equally unavailing is Plaintiffs' invocation of CPLR 302(a)(1)[6] to argue that this Court has specific jurisdiction over the Creative Defendants.  Under CPLR 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  The Amended Complaint is devoid of facts specifying what the Creative Defendants did to "transact[] business in the State of New York" and there is no allegation that the Creative Defendants entered into a contract with Plaintiffs to supply goods or services in New York.  AC ¶¶ 8-9; CPLR 302(a)(1).

Here again, the Amended Complaint relies solely on conclusory allegations that "Defendants do substantial business in the state of New York, such that their contacts with New

---

[6] Though Plaintiffs do not specify which subsection of the long-arm statute they are relying on, they appear to only implicate CPLR 302(a)(1).  Regardless, none of the CPLR 302(a) subsections apply to the Creative Defendants.  As a threshold matter, Plaintiffs do not allege that the Creative Defendants caused any alleged injury *in* New York, as Plaintiffs do not reside in New York or maintain their principal places of business in New York, nor do they allege that the Creative Defendants own or possess any real property in New York.  AC ¶¶ 6-7.  Thus, CPLR 302(a)(3) and (4) cannot apply.  Moreover, for a court to have jurisdiction over a party pursuant to CPLR 302(a)(2), the defendant must commit a tort while *physically present* in New York.  *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 730 (S.D.N.Y. 2010).  Because Plaintiffs do not allege that the Creative Defendants committed a tort while present in New York, CPLR 302(a)(2) does not apply either.

York are continuous and systematic," which are followed by a blanket statement that the "continuous and systematic contacts are related to this action."  AC ¶ 11.  Nowhere does the Amended Complaint point to a single meeting that either of the Creative Defendants attended, or any activity they undertook, in New York, nor do Plaintiffs allege that the Creative Defendants communicated with them while either party was in New York.  Similarly, the Amended Complaint does not state that the Plaintiffs funded the investments at issue through New York bank accounts. *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) ("[C]onclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a prima facie showing of jurisdiction.") (internal quotations omitted); *Liaros v. Vaillant*, No. 93 Civ. 2170 (CSH), 1996 WL 88559, at *5 (S.D.N.Y. Mar. 1, 1996) ("[A] conclusory allegation" that defendants transacted business from, through or in connection with City of New York "cannot suffice to establish personal jurisdiction under section 302(a)(1).").

The *only* connection the Creative Defendants are alleged to have to New York is that they "are already engaged in litigation in this District."  AC ¶ 12.  That contact alone is insufficient to establish specific jurisdiction in New York under CPLR 302(a)(1).  *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022) ("'[a] party's consent to jurisdiction in one case [] extends to that case alone.  It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available.'") (alterations in original) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).

Thus, Plaintiffs' attempts to satisfy New York's long-arm statute fail, and the Amended Complaint must be dismissed under Rule 12(b)(2).[7]

---

[7]  Because Plaintiffs have failed to satisfy New York's long-arm statute, the Court need not move to the second step of determining "whether asserting jurisdiction under that provision would be compatible with requirements of due

## II.   IN THE ALTERNATIVE, THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

In the alternative, this Court may properly dismiss this action on *forum non conveniens* grounds without the need to rule on the Creative Defendants' threshold jurisdictional defenses. *See Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x. 623 (2d Cir. 2009) (holding that court had jurisdiction to dismiss suit on basis of doctrine of *forum non conveniens* prior to making any determination whether it had personal or subject matter jurisdiction).

It is a well-settled principle that, when the relationship between a case and the selected forum is at best limited, federal courts should decline jurisdiction. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (approving *forum non conveniens* dismissal where plaintiff was not resident of forum state, events took place elsewhere and witnesses lived elsewhere); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 261 (1981) (*forum non conveniens* dismissal proper where American connection to subject matter of dispute was "simply not sufficient"). The Supreme Court recognized in *Gilbert* that the existence of jurisdiction alone is not enough; courts must also weigh whether the exercise of jurisdiction is appropriate in a particular case. 330 U.S. at 504.

The Second Circuit employs a three-part inquiry to analyze motions to dismiss for *forum non conveniens*. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) (*en banc*). A court must determine (i) whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; (ii) the degree of deference to be accorded the plaintiff's choice of forum; and (iii) given the appropriate degree of deference, whether the balance of private and public interests implicated in the choice of forum supports the chosen or the proposed alternative

---

process established under the Fourteenth Amendment to the United States Constitution." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (explaining that "due process" analysis is conducted "only if" jurisdiction exists under state law).

forum.  *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005).  Where the plaintiff's choice of forum is entitled to little or no deference, the case may be dismissed if the forum is also "shown to be genuinely inconvenient and the selected forum significantly preferable."  *Iragorri*, 274 F.3d at 74-75.

The instant action is a textbook example of a case that does not belong in the United States—and certainly not in New York—and it should be dismissed for *forum non conveniens*.

A.  Canadian Court Can Adequately Resolve Plaintiffs' Claims

Canada provides an "adequate alternative forum" to Plaintiffs.  Under Second Circuit precedent, an alternative forum is adequate if "(1) defendants are subject to service of process there, and (2) the forum permits litigation of the subject matter of the dispute."  *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998) (internal citations omitted); *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003).  This test is easily satisfied here.

1.  *The Creative Defendants are Subject to Service of Process in Canada*

Creative Wealth is a Canadian corporation with its principal place of business in Canada and is amenable to service of process there.  Similarly, Cloth is a Canadian citizen currently residing in Canada and is likewise amenable to service of process there.  The Creative Defendants do not object to being subject to the jurisdiction of Canadian courts with respect to the subject matter of this dispute.  In fact, the Film Contracts at issue provide that (i) they "will be governed by the laws of the Province of Ontario"; (ii) they "shall be governed and interpreted in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein"; and Plaintiffs "irrevocably attorn[] and submit[] to the non-exclusive jurisdiction of the courts of the Province of Ontario with respect to any matters arising out of this Agreement and waive[] objection

12

to the venue of any proceeding in such court or that such court provides an inconvenient forum." *See, e.g.*, Cloth Decl. Ex. D at 3, 12 § 11, 13 § 17.

     2.   *Canada Permits Litigation of the Subject Matter of this Dispute*

Where, as here, the defendants are amenable to service in the alternate forum, only in "rare circumstances" will the forum be deemed inadequate, as "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper*, 454 U.S. at 255 n.22, 250. Thus, to show inadequacy, it is not enough for a plaintiff to show that the law to be applied in the foreign forum would be less favorable to it; rather, it must "'plainly demonstrate that [it is] highly unlikely to obtain basic justice [in the foreign jurisdiction].'" *In re Air Crash Near Peixoto De Azeveda, Braz., on Sept. 29, 2006*, 574 F. Supp. 2d 272, 283 (E.D.N.Y. 2008), *aff'd sub nom., Lleras v. Excelaire Services Inc.*, 354 F. App'x. 585 (2d Cir. 2009) (citations omitted).

Here, Canadian law permits litigation of the subject matter of this dispute. A plaintiff in Canada can undoubtedly bring actions for breach of contract and fraud in the Canadian courts.

Indeed, time and time again, federal courts—including this Court—have recognized that Canada would provide an adequate alternative forum to hear litigants' claims. *See, e.g.*, *Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00 Civ. 9227 (GEL), 2001 WL 282684, at *4 (S.D.N.Y. Mar. 22, 2001), *aff'd*, 300 F.3d 242 (2d Cir. 2022) (dismissing contract dispute for *forum non conveniens* and stating that "Ontario courts clearly provide an adequate forum to resolve the present dispute"); *Lana Int'l Ltd. v. Boeing Co.*, No. 93 Civ. 7169 (LLS), 1995 WL 144152, at *2 (S.D.N.Y. Mar. 30, 1995) (dismissing various claims, including fraud and breach of contract, in favor of Ontario, Canada, which the court determined "offer[ed] an adequate alternative forum for th[e] action," notwithstanding that plaintiff could not assert claim under the Lanham Act).

B.  <u>Plaintiffs' Choice of Forum is Entitled to Little or No Deference</u>

When determining the level of deference accorded to Plaintiffs' choice of forum, "a court should compare the lawsuit's bona fide connection to the forum against any indicia that the plaintiff was motivated by forum-shopping."  *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011).  Five factors determine whether a choice of forum was motivated by genuine convenience or forum shopping: "[1] the convenience of the plaintiff's residence in relation to the chosen forum; [2] the availability of witnesses or evidence to the forum district; [3] the defendant's amenability to suit in the forum district; [4] the availability of appropriate legal assistance; and [5] other reasons relating to convenience of expense."  *Iragorri*, 274 F.3d at 72.

Plaintiffs reside outside of New York and maintain their principal places of business in Florida.  AC ¶¶ 6-7.  Their decision to file in New York could not have been made because of the Court's proximity to their residences or the convenience for witnesses.  Moreover, *none* of the parties to this action reside in or operate their businesses in New York.  These factors demonstrate that Plaintiffs' decision to sue in this Court was motivated by forum shopping, not genuine convenience.  *See Iragorri*, 274 F.3d at 71 (noting that, when a plaintiff does not choose its home forum, "a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries.").

Aside from Plaintiffs' solitary, vague assertion that "Defendants regularly and systematically conduct business in the Southern District of New York," AC ¶ 12, Plaintiffs do not identify any reason for bringing suit against the Creative Defendants in New York rather than Canada, where Plaintiffs and the Creative Defendants are amenable to suit by virtue of their

residence and/or the Film Contracts' forum selection clauses.  *See, e.g.*, Cloth Decl. Ex. D at 3, 12 § 11, 13 § 17.  As Plaintiffs appear to have been motivated by forum shopping, the Court should accord minimal deference to Plaintiffs' choice of forum.

C.  <u>Private and Public Interest Factors Weigh in Favor of Dismissal</u>

A moving defendant satisfies the third and final inquiry for dismissal under the doctrine of *forum non conveniens* where it shows that "the balance of private and public interest factors tilts heavily in favor of the alternative forum."  *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

1.  *Private Interest Factors*

The private interest factors to be considered include:

> [T]he interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of a view of relevant premises, if such a view would be appropriate to the action; and, all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citing *Gilbert*, 330 U.S. at 508).  This list compels the conclusion that New York would be a highly inconvenient and inappropriate forum for this dispute.

In particular, where witnesses and documents are primarily located in a foreign forum, dismissal is appropriate.  *See Capital Currency Exch.*, 155 F.3d at 611-12; *Strategic Value Master Fund v. Cargill Fin. Servs.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006).  Here, the Creative Defendants' evidence and witnesses are located in Toronto, where they conduct their business and Cloth resides.  Thus, while the cost and burdens imposed on the Creative Defendants by litigating in this forum would be greatly increased, requiring Plaintiffs to litigate this dispute in Canada

instead of New York would impose little additional hardship on them, as they would be required to travel regardless of whether this action is heard in New York or Canada. Thus, the private interests weigh in favor of a Canadian forum.

> 2. *Public Interest Factors*

The public interests include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509).

All of these factors weigh against litigating this dispute in New York. New York has a substantial interest in not cluttering its dockets and calling its residents for jury duty in a case that bears no relationship to this jurisdiction and instead involves a dispute between out-of-state parties concerning out-of-state transactions. *See CCS Int'l., v. ECI Telesystems*, No. 97 Civ. 4646 (LAP), 1998 WL 512951, at \*10 (S.D.N.Y. Aug. 18, 1998) (stating "there is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere"); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1128 (S.D.N.Y. 1992) ("Such tenuous contacts do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy."). Canada, on the other hand, has a significant interest in adjudicating this dispute, which involves its own residents and will require the interpretation of Ontario law, as required by the Film Contracts. The public interest factors therefore tilt in favor of Canada, not New York.

Accordingly, even if the Court finds that it may exercise personal jurisdiction over the

Creative Defendants, it should dismiss the Amended Complaint on *forum non conveniens* grounds.

## III.  RSBVP FAILS TO STATE A CLAIM FOR FRAUD AGAINST CLOTH[8]

RSBVP's fraud claim alleges that Cloth fraudulently induced it to "invest substantial monies in *Pathway*" through representations (i) about the timing of the recoupments of the investments in the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* Films and (ii) that *Pathway* had already been "greenlit" for five seasons.  AC ¶¶ 58-59, 61.  Under New York law, a plaintiff alleging a fraud claim must plead "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Crigger*, 443 F.3d at 234.  RSBVP fails to state a fraud claim because its pleading does not satisfy the particularity standard under Federal Rule of Civil Procedure 9(b) or establish that RSBVP reasonably relied on Cloth's alleged representations.

### A.  RSBVP Failed to Plead its Fraud Claim with the Requisite Particularity

Under Federal Rule of Civil Procedure 9(b), fraud must be pled with particularity.  The Second Circuit has interpreted Rule 9(b) to require that a complaint specify (i) "'the time, place, speaker, and content of the alleged misrepresentations'"; (ii) "how the misrepresentations were fraudulent"; and (iii) "the details that 'give rise to a strong inference that the defendant had an

---

[8]  Plaintiffs have not invoked foreign law or established that any conflict of law exists regarding the fraud claim. Under Florida and Ontario law, like under New York law, a plaintiff alleging a fraud claim must plead "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *accord Omnipol, A.S. v. Multinational Defense Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022); *Hryniak v. Mauldin*, [2014] 1 S.C.R. 87, at ¶ 87 (Can. Ont.) ("[T]he tort of civil fraud has four elements, which must be proven on a balance of probabilities: (1) a false representation by the defendant; (2) some level of knowledge of the falsehood of the representation on the part of the defendant (whether knowledge or recklessness); (3) the false representation caused the plaintiff to act; (4) the plaintiff's actions resulted in a loss."). Because there is no conflict between the laws of New York, Florida, and Ontario, New York law controls with respect to RSBVP's fraud claim.  *Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*, No. 05 Civ. 9640(PKL), 2009 WL 935665, at *10 (S.D.N.Y. Apr. 7, 2009) ("If no conflict is found between the law of the forum and any other jurisdiction whose law is invoked, then the Court should apply the law of the forum.").

intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Schwartzco Enters. LLC v. THM Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)).

Although the scienter element may be "averred generally," Fed. R. Civ. P. 9(b), "'plaintiff[s] must allege facts that give rise to a strong inference of fraudulent intent.'" *Schwartzco*, 60 F. Supp. 3d at 344 (quoting *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013)); *see LP Funding, LLC v. Tantech Holdings, Ltd.*, No. 15CV4081-LTS, 2016 WL 1706182, at *3 (S.D.N.Y. Apr. 27, 2016) (the plaintiff who asserts a fraud claim still has "'the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'") (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173-74 (2d Cir. 1994)).  "The inference 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Schwartzco*, 60 F. Supp. 3d at 344 (quoting *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Rule 9(b) does not grant "an aggrieved party 'license to base claims of fraud on speculation and conclusory allegations.'" *Id.* at 345 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  If a plaintiff's allegations of fraud are based on "information or belief," they "must be 'accompanied by a statement of facts upon which the belief is founded.'" *Id.* at 346 (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986)); *N.B. Garments (PVT), Ltd. v. Kids Int'l Corp.*, No. 03 Civ. 8041(HB), 2004 WL 444555, at *2 (S.D.N.Y. Mar. 10, 2004) ("A complaint … which fails to adduce any specific facts supporting an inference of knowledgeable participation in the alleged fraud, will not satisfy even a relaxed standard.").

RSBVP has not alleged its fraud claim with enough particularity to survive dismissal. Though RSBVP claims that Cloth stated (i) in a February 2021 email that the prior Film Contracts would be repaid and involved "zero" risk; and (ii) during a May 2021 phone call (of which there is apparently no written record) that *Pathway* had been "greenlit" for five seasons (AC ¶¶ 43-46), RSBVP still has not adequately alleged fraud (or fraudulent inducement).  It has not identified how the statements made in those communications induced RSBVP to take any action, how those statements were fraudulent when made, or how it can be inferred from those communications that Cloth harbored an intent to defraud RSBVP and knew that his statements were false.  *See Schwartzco*, 60 F. Supp. 3d at 345-46 ("[W]hile the Plaintiffs identify the 'who'…; the 'what'; and the 'when' of the fraudulent scheme, they fail to adequately allege 'how' and/or 'why' the relevant statements or representations were fraudulent, conclusory assertions notwithstanding.").

In an effort to manufacture a basis to claim that Cloth fraudulently induced it to enter into the *Pathway* Contract, RSBVP vaguely—and illogically—asserts that the February email (related to unrelated Films) somehow induced it to invest additional monies in the *Pathway* series in May. But RSBVP fails to explain *how* statements concerning Creative Wealth's intent to perform under the unrelated Film Contracts—statements made *three months* prior to the *Pathway* investment—so induced it.

Moreover, it is fundamental that mere statements of intent to perform under a contract cannot support a fraud claim.  *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (rejecting fraudulent inducement claim based on allegedly false statements that "Carriage House was able to pay what it owed under the sales contract, and intended to do so"). This is particularly true where the statement of intent to perform under prior, unrelated contracts, if true, would have required Creative Wealth to fulfill its contractual obligations *ahead* of schedule.

*Compare* AC ¶ 58 (alleging Cloth represented that the *Fables*, *Bubbles*, and *HHH* investments would be repaid "by the third quarter of 2021," and the *Monkey Man* investment would be "repaid by 'late summer' of 2021"), *with* AC ¶ 40 (specifying November 30, 2021 maturity date on *Fables* investment), *and* AC ¶ 32 (specifying May 2022 maturity date on *Bubbles* investment), *and* AC ¶ 27 (specifying April 21, 2022 maturity date on *HHH* investment), *and* AC ¶¶ 17-19 (not specifying any maturity date on the *Monkey Man* investment).[9]

Further, without any support, RSBVP asserts that it "is informed and believes that Defendant Cloth knew the … representations were false at the time they were made." AC ¶ 60. With respect to the Films, RSBVP bases this allegation on information and belief about "the actual status of the corresponding Films," without elaborating as to what that "actual status" was and how RSBVP became aware of it. AC ¶¶ 43-45. Nowhere does RSBVP allege that "'there existed intent not to [timely repay Plaintiffs] *at the time the promise was made*'" (*i.e.*, months before Creative Wealth was to repay the investments under the Film Contracts). *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (emphasis in original) (quoting *Koenig*, 25 F.3d at 1172).

As for Cloth's alleged misrepresentation that *Pathway* had been "greenlit" for five seasons—notwithstanding his alleged knowledge that it "had only been 'greenlit' for a single season" (AC ¶ 46)—RSBVP fails to explain how such an alleged misrepresentation had anything to do with its investment. Indeed, RSBVP has known at all times—including when it signed the *Pathway* Contract—that the entirety of its investment was for the financing of the first season of the series. Indeed, the *Pathway* Contract expressly provides that Creative Wealth was obtaining financing from RSBVP in connection with the "Project," which the uppercase, bolded title of the

---

[9] Notably, any promises Cloth made with respect to the repayment of the *Monkey Man* investment is immaterial. Since there was no maturity date included in the *Monkey Man* contract, requiring repayment of that investment by any date certain would have imposed additional obligations on Creative Wealth beyond those required under the Contract.

*Pathway* Contract defines as "FINANCING FOR THE FIRST SEASON OF THE SERIES ENTITLED 'PATHWAY.'"  Cloth Decl. Ex. K at 1.

Accordingly, RSBVP has failed to both explain how the alleged representations "'were fraudulent and plead those events which give rise to a strong inference that the defendant[s] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *S.A.C. Trading Corp.*, 711 F.3d at 359 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

### B.  RSBVP Has Not Particularly Pled Reasonable Reliance

RSBVP simply alleges that it "reasonably relied on Defendant Cloth's representations," without even attempting to establish why its purported reliance was reasonable.  AC ¶ 62.  "It is well established that justifiable reliance is an essential element of fraudulent inducement … claims, and must be pleaded with particularity pursuant to CPLR 3016(b)."  *MPEG La, LLC v. Samsung Elecs. Co.*, No. 654454/2015, 2017 WL 3670246, at *2 (Sup. Ct. N.Y. Cty. Aug. 25, 2017), *rev. judgement, dismissing appeal*, 166 A.D.3d 13 (1st Dep't 2018) (citations omitted).  "'Reasonable reliance entails a duty to investigate the legitimacy of an investment opportunity where 'plaintiff was placed on guard or practically faced with the facts.'"  *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 442 (S.D.N.Y. 2010) (quotations omitted).

Where "the proffered basis for relying on the alleged misrepresentation or omission is, as a matter of law, clearly unreasonable, the fraud claim is subject to dismissal at the pleading stage."  *MPEG La*, 2017 WL 3670246, at *4 (citing *MP Cool Invs. Ltd. v. Forkosh*, 142 A.D.3d 286, 291 (1st Dep't 2016)).  "This is a sensible rule, as no amount of discovery can possibly transform a legally impermissible species of reliance into one a finder of fact may deem reasonable."  *Id.*

Here, as in *MPEG La, LLC*, "the inquiry starts and ends with the well-settled proposition under New York law that 'a party claiming fraudulent inducement cannot be said to have

21

justifiably relied on a representation when that very representation is negated by the terms of a contract.'"  *Id.* (quoting *Perrotti v. Becker, Glynn, Melamed & Muffly LLP*, 82 A.D.3d 495, 498 (1st Dep't 2011)); *see also Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 479 (1st Dep't 2010) ("since the language of the contract variation contradicts plaintiff's allegations … those allegations are not presumed to be true.").  RSBVP alleges it relief on Cloth's representation "that there was 'zero' risk associated with the *Fables* Loans, *Bubbles* Loans, and *HHH* Loans," AC ¶¶ 44, 58, despite that representation conflicting with (i) the "Source of Repayment" provision in the relevant Film Contracts, which provides that the investment would be recouped from the film's gross receipts, "if any," *see, e.g.*, Cloth Decl. Ex. I at 1; (ii) the "Investor Representations and Warranties" provision in the relevant Film Contracts, through which RSBV represented that it "has relied on its own examination of the investment hereunder including, but not limited to, the LSA and the merits and risks involved.  Investor is aware that it may be required to bear the financial risks of this investment for an indefinite period of time," *see, e.g.*, *id.* at 2; and (iii) Section 8(a) of the Participation Agreements, through which RSBV "acknowledge[d] the risks inherent in making loans and/or equity investments in the Picture," and that Creative Wealth "ma[de] no[] representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture," and that "[t]here [wa]s no assurance that [RSBV] will earn a profit from or recoup its Participation."  *See, e.g.*, *id.* at 12-13 § 8(a).

Nevertheless, RSBVP claims that it may—during contract negotiations—rely on its counterparty's statements rather than the explicit terms of the contract.  But the clear disclaimers in the *Fables*, *Bubbles*, and *HHH* Contracts contradict any notion that there was "zero" risk associated with RSBVP's investments.  RSBVP had the means to discover the falsity of Cloth's alleged misrepresentation that there was "zero" risk (*i.e.*, by carefully reading the Film Contracts),

but did not employ those means, and, instead, alleges that it blindly relied on Cloth's representation.  "That fact would defeat an unsophisticated party's fraud claim," let alone a claim by a sophisticated party, and "it is without question an absolute bar" to RSBVP's claim here. *MPEG La*, 2017 WL 3670246, at \*5 (citing *Stuart Silver Assoc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98-99 (1st Dep't 1997); *Global Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 100 (1st Dep't 2006)).  Because RSBVP would have become aware of the falsity of Cloth's alleged representation by simply reviewing the Film Contracts, which RSBVP had in its possession for over a year before it was allegedly induced to invest in *Pathway*, RSBVP's fraud claim fails for lack of justifiable reliance.

## IV.    RSBVP'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

If the Court does not dismiss RSBVP's fraud claim altogether, it should deny RSBVP's grossly overreaching demand for punitive damages from Cloth.  *Cross v. Zyburo*, 185 A.D.2d 967, 968 (2d Dep't 1992) ("Even were we to credit the plaintiff's account of what transpired, the plaintiff has failed to set forth facts and circumstances which would warrant the imposition of punitive or treble damages.").

"Under New York Law, 'punitive damages are not available … for the ordinary case of fraud.'"  *Hettinger*, 733 F. Supp. 2d at 450 (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 371 (2d Cir. 1988)) (finding punitive damages inappropriate because defendants' "fraudulent conduct is no more morally reprehensible than the ordinary case of fraud").  "Rather, punitive damages are appropriate for 'gross, wanton, or willful fraud or other morally culpable conduct.'"  *Id.* (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 302 (2d Cir. 2006)).

"Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the

defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961) (citations omitted). To warrant an award of punitive damages, a plaintiff must show "'conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless to amount to such disregard.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 127 (2d Cir. 2013) (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990)); *see also Sapirstein-Stone-Weiss Found. v. Merkin*, No. 13 Civ. 415, 2013 WL 2495141, at *7 (S.D.N.Y. June 11, 2013) (Marrero, J.) ("Punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." (citations and internal quotation marks omitted)).

RSBVP does not—and cannot—allege that Cloth acted for "evil or reprehensible" purposes. There is no allegation or claim of any improper motive or personal gain. Moreover, RSBVP does not allege any facts in support of its claim that Cloth acted with a "willful and deliberate disregard of the consequences to Plaintiff RSBVP." AC ¶ 64. Simply saying so does not make it so, especially when the Amended Complaint is devoid of any allegations demonstrating Cloth had such particularized knowledge and intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that pleadings which are "no more than conclusions" are not "entitled to the assumption of truth"). Without alleging facts sufficient to satisfy the high threshold of misconduct required, RSBVP is not entitled to maintain a demand for punitive damages. *See, e.g.*, *Shanahan v. Vallet*, No. 03 Civ. 3496, 2004 WL 2937805, at *11-12 (S.D.N.Y. Dec. 19, 2004) (dismissing demand for punitive damages where plaintiffs did not "allege [] facts that point to high moral culpability or to gross, wanton, or willful fraud"); *Fin. Servs. Vehicle Trust v. Saad*, 72 A.D.3d

1019, 1021 (2d Dep't 2010) (holding that motion to dismiss demand for punitive damages should have been granted where plaintiff "failed to allege facts sufficient to demonstrate … conduct which rose to the high level of moral culpability necessary to support a claim for punitive damages").

In addition, RSBVP concedes that its relationship with the Creative Defendants was at all times governed by a contract.  Where alleged tort claims "arise[] out of a contract" or a contractual relationship, New York federal courts have required a showing of conduct "'aimed at the public generally'" in order to justify an award of punitive damages.  *See Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 610 (S.D.N.Y. 2011) (Marrero, J.), *aff'd*, 510 F. App'x 74 (2d Cir. 2013) (requiring conduct "'aimed at the public generally'" to award punitive damages where tort claim "arises out of a contract"); *Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311-12 (S.D.N.Y. 2009) (holding a showing of "public harm" necessary for award of punitive damages where there was a "contractual relationship").  Here, despite its conclusory allegations, the Amended Complaint does not allege conduct aimed at the public generally.  At best, RSBVP claims that Cloth's conduct was aimed exclusively at RSBVP.

For the aforementioned reasons, RSBVP's demand for punitive damages should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Creative Defendants respectfully request that the Court grant their motion to dismiss the Amended Complaint in its entirety.

Dated:   New York, New York
        February 9, 2023

**HERRICK, FEINSTEIN LLP**

By:   _/s/ William R. Fried_____
       William R. Fried, Esq.
       Samuel J. Bazian, Esq.
Two Park Avenue
New York, New York 10016
Tel: (212) 592-1400
*Attorneys for Defendants*

25